(26 Misc. Rep. 582.)

In re RANSIER.

(Surrogate's Court, Onondaga County. March, 1899.)

1. SURROGATE COURT—SUPREME COURT—CONCLUSIVENESS OF JUDGMENT.

On petition to a surrogate to settle a guardian's account, a judgment of the supreme court awarding the guardian the income of the proceeds of the sale of the ward's land is binding on the surrogate, though the judgment is clearly erroneous.

2. FRAUD OF GUARDIAN—NEGLIGENCE—LIABILITY OF SURETIES.

The sureties of a general guardian are not liable to the ward for damages resulting from the fraud or negligence of the guardian with respect to certain litigation in which the guardian acted for the ward under a separate appointment as guardian ad litem.

8. JUDGMENT—CONCLUSIVENESS.

If a judgment fixing the amount due from a guardian to the ward has stood unquestioned for 10 years since the ward became of age, it is, as between the ward and the guardian's sureties, conclusive as to the amount due to the ward.

4. GUARDIAN AND WARD—INCOME OF WARD'S PROPERTY.

If a guardian had a right of curtesy in the ward's lands whereby he became entitled to the income of the proceeds of the sale of the land, during his life, the fact that he received the proceeds of the sale as guardian did not deprive him of his right to the income.

5. SAME—ACCOUNTING BY GUARDIAN—JURISDICTION OF SURROGATE.

On a petition to settle the accounts of a general guardian, the surrogate court has no jurisdiction to order him to pay over the fund to the ward, or transfer it to another guardian, if the guardian does not consent to the order.

Petition by James M. Ransier for the settlement of his accounts as guardian of Jammie E. Ransier.

E. M. Wells, for petitioner and Jammie E. Ransier.

Hiscock, Doheny, Williams & Cowie, for respondent Trust & Deposit Co. of Onondaga.

GLASS, S. The petitioner, James M. Ransier, was appointed the general guardian of his son in May, 1868. The son became of age in 1888. Soon after the petitioner's appointment, an action was commenced and prosecuted in the supreme court for the partition of the real property of William Stilwell, the grandfather of the infant. One-sixteenth of the property sought to be partitioned had descended to the infant as an heir at law. The mother of the infant, who was the daughter of William Stilwell, had died five years prior to her father's death. The infant's father was also appointed his guardian ad litem in the action in partition. The real estate which was the subject of the partition action was sold under the judgment in the action which was entered in March, 1869. It was provided in the judgment as follows:

"It is ordered that the referee pay to the treasurer of Onondaga county one-sixteenth of the proceeds of the sale of said premises for the use and benefit

of Jammie Ransier, an infant, subject to the right by curtesy of his father, James Ransier, in and to the same, and the value of which may be determined by this court, and when so determined the sum to which each may be entitled, respectively, by said treasurer paid to each."

The infant's one-sixteenth share, amounting to $656.06, was paid over to the general guardian in years 1869 and 1871, and, after the payment of some expenses for the support of the infant, a balance of $638.56 was in the hands of the guardian on the 15th day of August, 1872. This balance was mingled by the guardian with his own funds in his business, and was soon lost. The guardian is now utterly insolvent. It does not appear how the fund came to be paid over by the county treasurer to the general guardian. Diligent counsel have been unable to discover any order or judgment of the supreme court authorizing the transfer; nor does it appear that any determination was ever had in the supreme court of the amount of the respective shares of the father and son in the fund, contemplated by the judgment entered. The guardian, in his account filed, has not charged himself with any interest upon the funds, and objection has been made by the ward that interest should be charged against the guardian since the receipt of the principal by him, nearly 30 years ago.

It is urged that, the ward's mother having died before her father, the one-sixteenth share descended directly from the grandfather to the grandson, and, consequently, that no tenancy by the curtesy existed; and that the judgment entered in the supreme court, in so far as it adjudged tenancy by the curtesy to exist, was erroneous. From the proofs in this proceeding, it is clear that the ward's mother did die five years before her father; and, if this court had the power, it would be compelled to conclude that the judgment entered in the supreme court was erroneous in the respect mentioned. But it has no such power; it cannot review the determination of the supreme court. That adjudication of the rights of the father and son in the fund in question, so long as it stands unappealed from, and not modified, must be accepted in this proceeding as binding upon all parties to this proceeding who were parties to that action. The supreme court has declared by its solemn judgment that the father is entitled to the use of the fund during his life, and this court has no right to say he is not. Without any question whatever, the ward's father, acting as his guardian ad litem in the partition action, was guilty either of gross negligence or gross fraud in allowing or procuring the judgment to be entered as it was entered; but that negligence or fraud attached solely to his capacity as guardian ad litem in the action, and not to his office as general guardian. For the damages sustained by the ward by reason of such negligence or fraud he must look to the father as guardian ad litem, and his sureties as such, and not to the sureties of the general guardian. The ward has seen fit to come into this proceeding with the adjudication of the supreme court staring him in the face. That judgment has stood unquestioned for 30 years, and the last 10 of the 30 have gone by since the ward reached full age. Upon proper and timely application by the ward after he became of full age, the supreme court would doubtless have righted the wrong by a prompt modification of the judgment, but no effort in that direction

has ever been made. It is the ward's own fault if, under our statute of limitation, it is now too late to make the attack. His neglect to assail the judgment has amounted to a ratification of it. The guardian's sureties during all these years have had a right to rely upon the judgment of the supreme court as the true measure of the respective rights of the father and son in the fund, and they are now entitled to its protection. They will be bound by the decree which is to be entered in this proceeding so far as it shall determine the amount of the ward's property which is, or ought to be, in the hands of the guardian. Altman v. Hofeller, 152 N. Y. 503, 46 N. E. 961. The fact that the guardian received the funds as such guardian did not lessen his right to their use during his life. In re Camp, 126 N. Y. 377, 27 N. E. 799. It must be held, therefore, that the guardian has been entitled to the income from the fund in question since he received it, and will be entitled to such income during his life. Under the authority of the Camp matter, above cited, the guardian cannot, in this proceeding, be compelled to pay the fund over to the ward, unless he sees fit to consent thereto; nor, unless such consent is given, can this court make any direction requiring him to pay over the fund to a suitable trustee, even though the loss of the fund by the accounting guardian is confessed. To accomplish a transfer of the fund to a proper custodian, in the absence of such a consent, resort must be had to a court of general jurisdiction. It is assumed that the guardian stands ready to file such consent. If he does so before the decree is entered herein, the decree will direct him to pay over to his former ward the balance of the principal in his hands, $638.56. If such consent is not filed, the decree will adjudge the amount of principal belonging to said infant in the hands of the guardian to be said sum of $638.56, without prejudice to such further action or proceeding, relating to the custody of said fund, as may be advised. The ward and the executor of the deceased surety, Mowry, are each allowed costs of this proceeding against the petitioner.

A decree may be entered on two days' notice. Decreed accordingly.